NOT DESIGNATED FOR PUBLICATION

No. 126,654

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHARLES RIDGE,
*Appellant*,

v.

KANSAS DEPARTMENT OF CORRECTIONS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; CLINTON W. LEE, judge. Submitted without oral argument. Opinion filed September 27, 2024. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Chadayne C. Walker*, legal counsel, of Kansas Department of Corrections, for appellee.


Before HILL, P.J., CLINE and ATCHESON, JJ.

PER CURIAM: Charles Ridge appeals the Leavenworth County District Court's dismissal of his petition for a writ of habeas corpus challenging how the Kansas Department of Corrections (KDOC) has considered the jail time credit he received in separate criminal cases resulting in his incarceration. Ridge says he should be released sooner than the KDOC says he should. But Ridge has not shown the district court erred. We, therefore, affirm the ruling denying him relief.

Ridge has correctly framed an issue that may be brought in a habeas corpus action under K.S.A. 60-1501 since he alleges he would be unlawfully restrained if required to

1

serve his sentences in the manner the KDOC has determined. See *McKinney v. State*, 27 Kan. App. 2d 803, 9 P.3d 600 (2000); *Yancey v. State*, No. 111,003, 2015 WL 770204, at *2 (Kan. App. 2015) (unpublished opinion). The record in this case is thin. Although we have gleaned the big picture, we lack some pertinent information about Ridge's criminal convictions.

FACTUAL AND PROCEDURAL BACKGROUND

The sequence of events unfolds this way. Ridge committed an aggravated burglary in Johnson County the first week of November 2015. He was involved in a murder in Wyandotte County the next day. Ridge was arrested for the burglary on November 5, 2015, and was held in the Johnson County jail. Before entering a plea or being sentenced on the aggravated burglary charge in Johnson County District Court, he was transferred to the Wyandotte County jail on December 22, 2016, to face a murder charge in Wyandotte County District Court. In August 2017, Ridge pleaded guilty in Wyandotte County District Court to second-degree murder. On October 6, 2017, the district court sentenced him to serve 144 months in prison and granted him 289 days of jail time credit, corresponding to the time he spent in the Wyandotte County jail.

Ridge was then returned to the Johnson County jail to conclude the aggravated burglary case. He pleaded guilty to aggravated burglary in December 2017. On February 2, 2018, the Johnson County District Court sentenced Ridge to serve a prison term of 53 months concurrent with the sentence on the second-degree murder conviction. The Johnson County District Court awarded Ridge 822 days of jail time credit against the 53-month sentence. The jail time credit reflects each day Ridge was in custody in either Johnson County or Wyandotte County awaiting the disposition of the charges against him. As a result, Ridge received jail time credit against both sentences for the 289 days he was in pretrial custody in Wyandotte County.

2

In his 60-1501 petition, Ridge appears to claim his controlling sentence on the second-degree murder conviction should be reduced by the 822 days of jail credit the Johnson County District Court awarded on the aggravated burglary conviction. He further suggests that would be appropriate because he is serving the sentences concurrently. The KDOC has not computed Ridge's projected release date that way and has credited him with 289 days of jail time against the 144-month sentence for second-degree murder. That sentence dictates Ridge's release date, subject to adjustments for good time he may receive for acceptable behavior while in prison. The Leavenworth County District Court found no basis to grant Ridge relief and dismissed his 60-1501 petition. Ridge has appealed.

LEGAL ANALYSIS

On appeal, Ridge offers two arguments for his position that he should receive more jail time credit against his controlling sentence. First, he asserts the Kansas Supreme Court's decision in *State v. Hopkins*, 317 Kan. 652, 659, 537 P.3d 845 (2023), requires the KDOC give him 822 days of jail time credit against the controlling sentence. Second, he asserts the "sentence begins date"—an artificial date calculated using the jail time credit—should be the same for the aggravated burglary conviction and the second-degree murder conviction because he is serving the respective sentences concurrently. In turn, he says, the KDOC has incorrectly determined his projected prison release date and would require him to serve an unlawfully long incarceration. Neither position rests on a sound legal foundation.

In reviewing the district court's ruling, we perceive no disputes about the material facts. So we appear to face a question of law we consider without any particular deference to the district court. See *In re Estate of Oroke*, 310 Kan. 305, 310, 445 P.3d 742 (2019); *State v. Mejia*, 58 Kan. App. 2d 229, 231-32, 446 P.3d 1217 (2020).

3

*The Law of Jail Time Credit and the* Hopkins *Decision*

In *Hopkins*, the court plainly overruled earlier decisions declaring that a defendant was entitled to jail time credit only if they had been held in pretrial detention "solely" in that case. 317 Kan. at 656-57. The *Hopkins* court recognized that such a constrictive rule could not be squared with the governing statutory language in K.S.A. 21-6615(a) and its predecessors. But neither the statute nor *Hopkins* directly addresses how jail time credit should be granted to a defendant sentenced in multiple cases, especially in more than one judicial district. The statute refers to jail time credit in the context of a single criminal case. Likewise, *Hopkins* factually wound up looking at jail time credit for a single conviction, although Hopkins had been held for some period on charges in multiple cases. As the result of an agreement with the State, Hopkins pleaded guilty to two counts of first-degree murder that had been charged in a single case. The district court sentenced Hopkins to life in prison with parole eligibility after serving 50 years on one conviction and a concurrent life term on the other conviction. On appeal, Hopkins challenged how the jail time credit should be computed, and the court held he was entitled to a credit for all of his pretrial detention because he ultimately pleaded to and was sentenced in a single case. 317 Kan. at 659.

Apart from recognizing that a defendant held in multiple cases is entitled to *some* jail time credit, *Hopkins* does not address how the credit should be computed or apportioned between or among sentences imposed in more than one case. But nothing in *Hopkins* suggests a defendant should receive duplicate jail time credit in multiple cases so that *all* of the jail time credit reduces the sentences imposed in *each* case. That would allow a defendant double, triple, or even quadruple credit depending on how many cases they had been convicted and sentenced in.

We have since held that neither *Hopkins* nor K.S.A. 21-6615(a) permits or requires a double counting of jail time credit when a defendant has received consecutive

sentences in separate cases. *State v. Feikert*, 64 Kan. App. 2d 503, Syl. ¶ 2, 553 P.3d 344 (2024), *petition for rev. filed* August 12, 2024. Before *Hopkins*, at least some courts would have granted a defendant no jail time credit for the period they were held in pretrial detention in both cases. After *Hopkins*, defendants receiving consecutive sentences have argued each sentence should be reduced by the same period of pretrial detention—a duplicative credit shortening both sentences. We rejected that argument in *Feikert*.

The guiding rule, consistent with K.S.A. 21-6615(a), would seem to be that a defendant should receive one day of jail credit against their controlling term of incarceration for each day spent in pretrial detention on the conviction or convictions that form part of that controlling term. *Feikert*, 553 P.3d at 348 (language in K.S.A. 21-6615[a] "does not mean that a defendant is entitled to a duplicative credit for time spent in jail awaiting disposition of criminal charges against multiple cases"). So every one of those days gets counted, but none gets counted twice (or more).

Jail time credit presents a less acute issue when a defendant receives concurrent sentences in multiple cases. Presumably, the district court imposing the longest and thus controlling sentence can determine how long the defendant had been in pretrial detention on that charge and will grant a corresponding jail time credit. If the periods of pretrial detention in the cases do not overlap precisely, the defendant may be entitled to some jail time credit against a shorter sentence. But that credit would not shorten the defendant's controlling term of imprisonment and typically would amount to a legal irrelevancy.

Here, Ridge submits he should receive a jail time credit of 822 days against the 144-month sentence he received on the second-degree murder conviction in Wyandotte County. As we have outlined, the 822 days correspond to the continuous period Ridge had been in pretrial detention pending the disposition of the Johnson County aggravated burglary case. But Ridge had been held on the Wyandotte County murder case for a

5

portion of that period. Plainly, all of the 822 days cannot be attributed to the Wyandotte County case as jail time credit. After Ridge was sentenced on October 6, 2017, he was no longer being detained "pending disposition" of the Wyandotte County case, so the time he spent in the Johnson County jail after that could not be treated as a credit against the 144-month sentence. Under K.S.A. 21-6615(a), jail time credit "shall be computed as an allowance for the time that the defendant has spent incarcerated pending the disposition of the defendant's case." That alone undoes Ridge's legal argument for habeas corpus relief.

Moreover, the abbreviated record in this 60-1501 action does not establish when Ridge was first charged with the murder in Wyandotte County District Court. He would not have been entitled to any jail time credit before then on the sentence he received in that case. In short, Ridge was not legally entitled to 822 days of jail time credit against the 144-month sentence, and he has not shown on this record that the Wyandotte County District Court erred in granting him a 289-day credit. The Leavenworth County District Court, therefore, correctly denied Ridge relief on this point.

In wrapping up this issue, we add two observations. First, as the *Feikert* panel mentioned, the Legislature amended K.S.A. 21-6615 as of May 23, 2024, presumably at least in part in response to *Hopkins*. Neither Ridge nor the State has suggested the amended version of K.S.A. 21-6615(a) should be applied here or that our legal analysis would be any different if it were. The principal changes clarify that a defendant should receive some jail time credit even if they have been in pretrial detention in more than one case, a defendant should not get a duplicative counting of jail time credit to reduce consecutive sentences in multiple cases, and any period incarcerated in another jurisdiction should not be counted as jail time credit unless a hold has been placed on the defendant. See L. 2024, ch. 96, § 7. None of those amendments would affect our decision here, especially given the material evidentiary gap in the record.

6

Second, in its brief, the State has suggested the Johnson County District Court correctly granted Ridge 822 days of jail time credit against his sentence for aggravated burglary—effectively double counting the 289 days the Wyandotte County District Court granted against the sentence for second-degree murder. That aspect of the jail time credit awards is not in front of us, and it does not affect Ridge's ultimate release date. Facially, at least, the double counting seems debatable. But the parties have not made this case a debate stage. We, too, decline to do so.

*Determination of Projected Release Date*

Even if *Hopkins* does not require relief, Ridge alternatively contends the KDOC has incorrectly determined his projected release date because his concurrent sentences should have a single "sentence begins date." In turn, he says he should get credit for 822 days rather than only 289 days against his controlling 144-month sentence. Ridge posits that concurrent sentences inherently should have a single "sentence begins date" precisely because they are to be served concurrently. But he cites no direct authority for the proposition, and it misapprehends what the sentence begins date represents for a given conviction. The sentence begins date is a calendar date calculated counting backward from the actual sentencing date by the number of days the district court has granted as jail time credit. See K.S.A. 21-6615(a); K.A.R. 44-6-101(e)(2) (defining "sentencing begins date" as "calendar date" district court establishes that "shall reflect the time allowances as defined in jail time credit"). The determination is specific to the particular sentence and the credit granted, and it is not dependent upon whether the term of imprisonment is to be served consecutively or concurrently to some other sentence.

The KDOC uses the sentence begins date as the foundation for determining a defendant's a projected release date. The duration of the controlling guidelines sentence stated in months is added to the sentence begins date yielding a projected calendar date for the defendant's release. K.A.R. 44-6-140(d).

7

Contrary to Ridge's premise, concurrent sentences in different cases often will have different sentence begins dates. If they don't, it's a matter of happenstance—not a legal requirement of concurrent sentences. Ridge cites several administrative regulations consistent with this treatment of jail time credit and the sentence begins date as if they support his position. But he never explains how they do. They don't.

For example, Ridge quotes K.A.R. 44-6-138, related to sentence begins dates. The regulation provides that a sentence begins date "shall reflect all jail credit," meaning the days a district court has granted. K.A.R. 44-6-138(a). Similarly, orders from district courts imposing multiple concurrent sentences "shall serve as the reference to ascertain the sentence begins date" to determine the period of incarceration and projected release dates. K.A.R. 44-6-138(c). Basically, the regulation says a district court's sentencing orders will guide the KDOC, and it is consistent with different sentences having different sentence begins dates.

Moreover, K.A.R. 44-6-140(d) addresses the computation of a projected release date for an inmate with concurrent guidelines sentences and provides: "For new admissions with multiple concurrent guidelines sentences, the prison portion of each sentence shall be added to its sentence begins date. The sentence with the term requiring the longest time to be served in prison shall be the sentence controlling the guidelines release date." First, the regulation establishes that each of the multiple concurrent sentences will have its own sentence begins date, contrary to Ridge's underlying premise. And the KDOC will determine a defendant's anticipated release date based on the longest sentence, taking account of the sentence begins date and thus the jail time credit for that sentence as compared to the others. According to Ridge, that's what the KDOC has done with his cases. So the KDOC appears to have followed its own regulations that conform to the relevant sentencing statutes. Ridge's second argument on appeal, therefore, fails to show a legal mistake in his projected release date. See *State v. Hopkins*, 295 Kan. 579, 581, 285 P.3d 1021 (2012) ("The right to jail time credit is statutory.").

8

There may be circumstances—and this appears to be an example—where a defendant held in pretrial detention for an extended time on a felony resulting in a comparatively short sentence to be served concurrent with a substantially longer felony sentence in a separate case with considerably less jail time credit may not see a reduction in their projected release date corresponding to the combined amount of jail time credit granted in both cases. That sort of imperfect fit or slippage of jail time credit in establishing a release date when a defendant has been convicted in multiple criminal cases may be figuratively regarded as the wages of sin. It is a cost of ongoing criminality. The result, however, does not amount to a correctable legal injury.

Affirmed.